Dissenting opinion of
Judge Hitchcock :
The principal question in this case is, whether a purchase at *564 administrator’s sale, made by one who had assisted in appraising the property, shall be set aside on the petition of heirs of creditors, when the sale was properly conducted and has been approved by the court of common pleas.
There is no controversy as to the general doctrine, in equity,that a trustee can not purchase the trust property of his cestui que trust, and this doctrine applies to agents, executors, administrators, sheriffs, and other ministerial officers intrusted with the sale °f property, auctioneers, etc., and, in general, to all cases where one party has it in his power, in consequence of confidence reposed, *in a secret manner to sacrifice interests for his own advantage, which he is bound to protect. Does an appraiser of land, under our law regulating the duties of administrators, etc., come within this rule ? It seems to me not, but my brethren think otherwise.
By this law, if, in the progress of the settlement of an estate, it becomes necessary to sell lands for the payment of debts, application is made to the court of common pleas by petition by the administrator, and the heirs are made defendants. If the court are satisfied that a sale is necessary, the next step taken is to appoint three freeholders of the county to appraise the land intended to be sold. These appraisers, after taking an oath to act faithfully, fix a valuation upon the land, and make return to the court, and their duty is pei-formod. They have no further agency in the business, no further power over the land. The only trust and confidence reposed in them is to fix this valuation. It is a trust, if trust it may be called, which might, by possibility, be abused if reposed in one individual, but it is reposed in three; and I have a better opinion of that class of freeholders who are ordinarilv selected by the court as appraisers, than to suppose they would violate their oaths, because one of their number might desire to become the purchaser of the lands which they were about to appraise.
The court, having ascertained the value of the land, direct the administrator to sell, and the law provides that, in the first instance, the land shall not be sold for less than two-thirds of the appraised value. After the sale, the business again comes before the court, and if, upon examination, everything is found to be fair and' legal, the administrator is ordered to make a deed. It v ould seem, as if here were guards and cheeks sufficient in the statute it *565 self, without going beyond it to devise others from the doctrine applicable to trusts.
It is the policy of the law, and for the interest of all concerned, that competition sbouid be encouraged at administrators’ sales, as well as at all other sales made in pursuance of judicial proceedings. Upon this principle, by a late act of the general assembly, an administrator is allowed, under certain restrictions, to be a purchaser at his own sale. 35 Ohio L. 60. But by the decisions of the court, throe men are precluded from bidding, because if they have no right to purchase, they have no right to bid. Although one oí them may be willing to give more, much more, than any other individual, yet he can not have the land. And the *land itself must be sold for less than its value, because he who is willing to give for it its value, has been once appointed by the court to ascertain that value. I can not see this to be proper, and it seems to me that an appraiser possesses nothing of that fiduciary character contemplated in the doctrine precluding trustees from purchasing. Judge Benson says, “Although it may seem hard that the trustee should be the only person of all mankind who may not purchase, yet for very obvious consequences it is proper the rule should be strictly pursued, and not in the least relaxed.” 2 Caine’s Cases in Error, 183. By the decision in this case,’however, the trustee is not the “ only person ” who may not purchase.
No case has been cited as directly in point, and it is by analogy the principle is to be sustained. The case most analagous to the one before the court is the case of the New York Building Company v. Mackenzie, 8 Bro. P. C. All I know of this case is derived from what is said by Chancellor Kent in the case of Davoue v. Fanning, 2 Johns. Ch. 252. From his statement it seems that the case originated in the court of sessions in Scotland. “ The appellants were an insolvent company, and their estates were sold by order of the court of' sessions at a public judicial sale to satisfy creditors. The course of such sale is to set up the property at a value fixed upon by the court, which is called the asset price, and which is founded on the information procured by the common agent of the court, who has the management of all the outdoor business of a cause. The respondent here was the common agent in that case, and he has purchased himself at the asset price, no person appearing to bid more, and the sale was affirmed by the *566 court.” This order of confirmation was reversed in the house of lords, and the sale set aside. The reasons, it seems, are not given in the reported case, and can only be gathered from the arguments of counsel.
It may, at first view, be thought that this is a strong case in favor of the position that appraisers have no right to purchase; but upon careful examination, I think it will be found that there is but little analogy between it and the case before this court. What wasHhe business of this common agent? All I know about it is, as before remarked, from what is said by the chancellor in the case referred to. He had the management of all the out-door business of a cause. He ascertained for the court the value of the land, not from his own knowledge, but from the information of others. He afterward sold the land. If in this I am correct, he *was more like an administrator, under our law, than like an appraiser, and having purchased the land, he stood before the court in the character of both vendor and vendee. In order that the analogy might be complete, the purchaser, in the case referred to, should have been one from whom the common agent received information as to the value of the land, not the common agent himself. “ This decision,” the chancellor says, “ carried the doctrine to its full extent,” but when we extend it to embrace an appraiser, we certainly extend it much further.
It is claimed on the part of the heirs, that by an equitable construction of section 12 of the act of February, 1824, “regulating judgments and executions,” Chase’s Ohio L. 1297, this case is embraced.
This thing of extending a statute by equitable construction is a matter of which our people, for whom statutes are made, know but little. And there certainly is not that general character in the legislation of the state which renders it necessary to extend statutes by equitable construction. If even necessary, the cases are extremely rare.
Section 12 of the act regulating judgments and executions has reference to sales of real property by a sheriff, and forbids that officer, or any person, who has, in pursuance of the law appraised the land, to purchase, and declaims a purchase made by either void. There is certainly a similarity in the modes of proceeding between sales by sheriffs and by administrators. In either case the land must be appraised, and in the first instance can not be *567 sold for less than two-thirds its appraised value. But there is this difference; the sheriff sells immediately upon the appraisal» without the interference of the court, while an administrator can not sell until the appraisal itself is approved and a sale subsequently ordered. Whether this difference is so material that in the one ease the sale should be declared void, and in the other held good, is not for me to say.
One reason for extending a statute by equitable construction is, that if the case to which it is proposed to extend it had been in the mind of the legislature at the time the statute was enacted, it would probably have been embraced. This case was in the mind of our legislature when the statute regulating judgments and executions was passed. That act was passed on the 4th of February, and the act defining the duties of administrators, etc., on the 11th, only seven days after. Both acts must have been necessarily before that body at one and the same time. Under *these circumstances, I can come to no other conclusion than that, as the legislature prohibited an appraiser irom purchasing in one case, and did not in the other, in the case where not prohibited, it was intended he should have an equal right with others to purchase.
There is another view of this subject which is worthy of consideration. Lands of deceased persons have been sold substantially in the same manner they are now for the payment of debts, since 1807, a period of more than thirty years. Is it not possible that within that time there are many instances in which appraisers have been purchasers ? There has been no positive law against it. It is possible that even among the members of the legal profession, the prevalent opinion has been that such purchase was proper. I must confess that I never heard a doubt suggested with respect to it until this case was presented to the court on the last circuit. Under such circumstances, even if I suspected the practice might be wrong, I would not interfere. The legislature are the appropriate tribunal to apply the remedy. They might do it as they have done in the case of sheriff sales, by a law which would be prospective in its operations, while the decisions of this court has upon these titles all the effect of retrospective legislation. I know it may be said that this court has nothing to do but to declare the law, regardless of consequences; but there is *568 another maxim. It is this: Communis error facit jus, and it is peculiarly applicable to a case like the present.
There is another question in this case. The estate of Huston was insolvent, as appears from the facts of the case. We all agree that, under such circumstances, the rights of the heirs are subordinate to the fights of creditors. Under such circumstances if the purchase by Armstrong is set aside, a-resale should be ordered, and the proceeds applied, first, to refund the amount advanced by Armstrong, and then in payment of debts. But such was not the decree in this case. Such .could not be the decree, because neither the administrator of Huston, nor his creditors, are parties upon the record, The effect of the decree is to vest in the heirs of Huston property which confessedly does not belong to them until the debts of their ancestors are paid. It seems to me that, in this respect, it is wrong, and for this reason, as well as for the reasons before assigned, should be reversed.